1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MICHAEL TATER-ALEXANDER,

          Plaintiff,

   v.

COUNTY OF FRESNO, et al.,

          Defendants.

_____/

CASE NO. 1:10-cv-01050-AWI-SMS

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DENIAL OF
MOTION TO AMEND AND DISMISSAL
FOR FAILURE TO STATE A CLAIM

(Docs. 5 & 6)

On June 10, 2010, Plaintiff Michael Tater-Alexander, proceeding pro se and in forma pauperis, filed a complaint raising multiple claims under the U.S. Constitution, federal statutes, and California law arising from Fresno County's refusal to provide an administrative hearing to review a parking ticket (Doc. 1). The complaint was referred for screening by the Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302 and 72-304. On June 18, 2010, this Court dismissed the complaint for failure to state a claim, granting Plaintiff thirty days to amend (Doc. 4).

On July 19, 2010, Plaintiff filed a first amended complaint, which he styled as a *qui tam* action (Doc. 6). Plaintiff substituted "The People of the County of Fresno" and "The People of

the State of California" as the plaintiffs and added 22 new defendants.[1]  On July 22, 2010,

Plaintiff moved to amend the first amended complaint to further modify the parties and to add

further information.  Having reviewed the first amended complaint and the motion to amend in

light of the alleged facts and applicable law, this Court finds that the first amended complaint

fails to state a cognizable claim upon which relief could be granted.  Accordingly, the Court

recommends that Plaintiff's motion to amend again be denied and that this matter be dismissed

with prejudice.

## I.      Screening Requirement

A court has inherent power to control its docket and the disposition of its cases with

economy of time and effort for both the court and the parties.  *Landis v. North American Co.*, 299

U.S. 248, 254-55 (1936); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir.), *cert. denied*, 506

U.S. 915 (1992).  Notwithstanding any filing fee, or any portion thereof, that may have been paid,

in cases in which the plaintiff is proceeding *in forma pauperis*, the court shall dismiss the case at

any time if the court determines that . . . the action or appeal . . . is frivolous or malicious . . . or

fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

## II.     Procedural and Factual Background[2]

When Plaintiff attended a DSS administrative hearing on April 21, 2009, "[t]here [was]

no ample parking" (¶ 40).  Since 20-25 empty spaces were available in an adjacent county

---

[1]  In these Findings and Recommendations, the term "Plaintiff" will refer only to the original individual
Plaintiff in this action, Michael Tater-Alexander.

[2]  Unless otherwise noted, this section is derived from the first amended complaint (Doc. 6).

parking lot, Plaintiff parked there, reasoning that, as a disabled person,[3] he was entitled to

"reasonable accommodation" under the Americans With Disabilities Act (¶ 41).  When Plaintiff

returned 20 minutes later, he had received a parking ticket (¶¶40, 41).  He maintains that, since

the lot still contained empty parking spaces, the ticket should not have issued since he had done

no harm (¶ 41).  Plaintiff mailed a request to dismiss the parking ticket for "excusable neglect,

inadvertence or harmless error" (¶¶ 42, 43).

In a written decision dated May 26, 2009, Defendant Fresno County denied Plaintiff's

request (¶ 43).  The envelope in which Plaintiff received the decision was postmarked May 29,

2009 (¶ 43).  Because California law provides 21 days to request an administrative hearing,

Plaintiff decided that his request was due 21 days after the envelope was postmarked or June 19,

2009 (¶ 45).  The envelope in which Plaintiff mailed his request was postmarked June 16, 2009[4]

(¶ 46).

On or about July 15, 2009, Plaintiff received a notice from Fresno County advising him

that the citation was valid, the unpaid fine had doubled to $70.00, and that his vehicle registration

could be withheld (¶ 47).  Plaintiff responded by writing letters explaining the "error" to

Defendants Fresno County, County Supervisor Debbie Poochigian, and the Parking Citation

Service Center (¶¶ 48, 49, 50, 51).  Plaintiff received no responses (¶¶ 48, 49).  Plaintiff contends

that these letters constituted "Direct and Constructive Notice" to the County that it would be

liable for all future liability arising from its error (¶ 50).

---

[3]  Plaintiff has multiple disabilities, including diabetes and pancreatitis (¶¶ 35).  He walks with a cane, and occasionally needs to use a walker or wheelchair (¶ 34).

[4]  In this and several other instances, the first amended complaint indicates the date as "2010" rather than "2009."  The Court has corrected this error whenever the context indicates that 2009 is the appropriate year of the event in question.

On July 17, 2009, the registration of Plaintiff's van expired (¶ 51).  Plaintiff knew that, because he had not paid the parking ticket, DMV would refuse to reregister it (¶ 50).  Plaintiff told DMV manager Barbara Helm-Mendez that the county intentionally miscalculated the 21-day rule so it could collect a double fine (¶ 51).  Plaintiff asked DMV for a hearing, which it denied (¶ 51).  Plaintiff also filed a claim for damages from the County, which the Board of Supervisors rejected on December 1, 2009 (¶ 52).

On August 3, 2009, Plaintiff obtained a temporary motorcycle operator's permit so he could legally move a motorcycle (¶ 68).  He specifically did not elect to renew his driver's license at the same time (¶ 68).  Plaintiff's driver's license expired on August 30, 2009 (¶ 67).

Plaintiff continued to drive the van even though it was no longer registered.  He intended to provoke a traffic stop to force "due process re the withholding of his registration to address and resolve the matter" (¶ 65).  "[P]laintiff demanded due process even if it meant the possibility of arrest, the impounding of [P]laintiff's vehicle, potential loss of use of [P]laintiff's vehicle and other damages rather than be extorted by the County on its illegal parking scam" (¶ 66).[5]

On September 6, 2009, Plaintiff was stopped by officers of Defendant Clovis Police Department and cited for driving an unregistered vehicle in violation of California Vehicle Code § 4000(a)(1) and for driving with an expired operating permit (¶ 63).  Plaintiff refused to sign the citations upon the officers' request. Ultimately, Plaintiff was arrested, and his vehicle was impounded and towed (¶ 63).[6]

---

[5]  Plaintiff also sought to trigger a traffic stop while he was alone in his vehicle lest he be stopped with his young granddaughter in the car (¶ 65).  If Plaintiff were arrested in her presence, "she would be taken to CPS [and] traumatized for life" (¶ 65).

[6]  According to Plaintiff, but for the County's refusal to conduct an administrative hearing regarding the parking ticket, he would not have been arrested and his vehicle would not have been impounded (¶ 63).

-4-

Somehow, Plaintiff ended up at Community Regional Medical Center's emergency room (¶ 108).  The first amended complaint does not allege whether Plaintiff was somehow injured or became ill in the course of his arrest or whether Plaintiff requested treatment of one or more of his existing medical problems.  While detained in the emergency room, Plaintiff alleges that he was restrained by handcuffs or chains or both, and that his requests for administration of prescription medication(s) he had with him and of certain medical tests were denied (¶¶ 108, 109, 111, 112).  Police officers repeatedly advised Plaintiff that he could be released if he signed the traffic citations (¶¶ 110, 113).  Plaintiff interpreted these statements as coercion or abuse.  Ultimately, Plaintiff signed the citations in order to be able to take his medication and to address Plaintiff's perceived need to address symptoms that he recognized as impending hypoglycemia (¶ 114).  Plaintiff alleges that his treatment (or lack of treatment) in the emergency room was intended to coerce him to sign the citations against his will.

Before Plaintiff's trial on the traffic citations, Plaintiff attempted to renew his driver's license but was unable to do so (¶ 69).  At one point, a DMV employee told Plaintiff that, since he had a pending application for a motorcycle permit, he would need to surrender the motorcycle permit before DMV could process his driver's license application (¶ 69). Plaintiff refused to surrender the motorcycle permit unless DMV would agree to refund the $14.00 fee that Plaintiff had paid for it (¶ 70).  DMV refused (¶ 70).

Plaintiff's trial was scheduled for December 22, 2009.  Because "Plaintiff ha[d] previous dealings with the Fresno Superior Court and believes they are corrupt," he moved for a stenographic reporter and verbatim record of the proceedings (¶71).  Plaintiff also subpoenaed as witnesses DMV manager Helm-Mendez, Parking Ticket Service Center Supervisor Armando

Hindman and employee Brian Varela, to testify that Plaintiff could not receive a driver's license unless he surrendered the motorcycle permit and that DMV would not refund the fee paid for the motorcycle permit if Plaintiff surrendered it (¶¶ 70, 71, 72).

Plaintiff, two unnamed Clovis police officers, Hindman and Varela were present at trial (¶ 73).  Helm-Mendez declined to appear (¶74).  Because no district attorney or city attorney was present, Plaintiff alleges that Judge Fain assumed the role of prosecutor and was biased against Plaintiff (¶ 73).

Judge Fain denied Plaintiff's motion for a bench warrant to compel Helm-Mendez's attendance (¶ 78).  Plaintiff contends that because Helm-Mendez was to have provided the foundation for the testimony of Hindman and Varela, he was unable to present Hindman's and Varela's testimony (¶ 80).

## III.   Pleading Standards

Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to § 1983 actions.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz*, 534 U.S. at 512.  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'"

*Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555.  While factual allegations are accepted as true, legal conclusions are not.  *Iqbal*, 129 S.Ct. at 1949**.**

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (*citations omitted*).  A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Id.* at 555-56 (*internal quotation marks and citations omitted*).  To adequately state a claim against a defendant, a plaintiff must set forth the legal and factual basis for his claim.

## IV.   **Preliminary Matters**

### A.   **Class Action**

Plaintiff proposes to broaden the scope of his *qui tam* action and convert this case to a class action.  Federal Rule of Civil Procedure 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

That the action in question are being prosecuted *pro se* is fatal to the requirement that "the representative parties will fairly and adequately protect the interests of the class." Fed. R.. Civ. Proc. 23(a)(4).  Plaintiff is a layman who could not proceed to represent others in a class action.

> [L]aymen such as  plaintiffs--who do have an absolute right to represent themselves individually–are not entitled to practice law by representing others.

> That absolute prohibition reflects in part the societal judgment that nonlawyers do not possess the legal training and expertise necessary to protect class interests. Over and above that the potential for conflicts of interest militate against certifying a class in which the class representative (even though a lawyer) also seeks to act as class counsel.

*Harris v. Spellman*, 150 F.R.D. 130, 132 n. 2 (N.D. Ill. 1993).

## B.      Color of State Law: Private Parties

The first amended complaint includes constitutional claims against Community Regional Medical Center, a non-governmental entity.  In addition, as this Court understands the first amended complaint, some of the John Does are intended to be Medical Center employees. Generally, private parties are not acting under color of state law.  *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991), *cert. denied*, 503 U.S. 938 (1992).  If a private party conspires with state officials to deprive others of constitutional rights, however, the private party is acting under color of state law.  *See Tower v. Glover*, 467 U.S. 914, 920 (1984); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000); *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1231 (9th Cir. 1996) (per curiam), *cert. denied*, 519 U.S. 1081 (1997); *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996); *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983).

"To prove a conspiracy between the state and private parties under [§] 1983, the [plaintiff] must show an agreement or meeting of minds to violate constitutional rights.  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each must at least share the common objective of the conspiracy."  *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.) (en banc), *cert. denied*, 493 U.S. 809 (1989) (*citations and internal quotations omitted*).  *See also Franklin*, 312 F.3d at 441;

-8-

*Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301-02 (9th Cir. 1999);

*Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir.), *cert. denied*, 528 U.S. 1061

(1999); *Taylor v. List*, 880 F.2d 1040, 1048 (9th Cir. 1989).  Conclusory allegations are

insufficient to state a claim of conspiracy.  *See Simmons v. Sacramento County Superior Court*,

318 F.3d 1156, 1161 (9th Cir. 2003); *Radcliffe v. Rainbow Construction Co.*, 254 F.3d 772, 783-

84 (9th Cir.), *cert. denied*, 534 U.S. 1020 (2001); *Price*, 939 F.2d at 708-09.

Plaintiff's fanciful and conclusory allegations do not allege a cognizable claim that

Community Regional Medical Center or any of its employees conspired to violate Plaintiff's

constitutional rights.  Accordingly, this Court recommends all § 1983 claims against Community

Regional Medical Center or its employees be dismissed.  Nonetheless, these findings and

recommendations will address Community Regional Medical Center's potential liability in each

claim set forth against it the first amended complaint.

### C.    Defendants Nelson and Baldwin

Defendants Nelson and Baldwin are included within the caption and identified in the

preliminary paragraphs of the first amended complaint, but no substantive allegations against

them are set forth any where else in the first amended complaint.  Accordingly, this Court

recommends that Defendants Nelson and Baldwin be dismissed from this case, with prejudice.

### V.    Legal Issues Raised in Introductory Paragraphs of First Amended Complaint

### A.    Americans With Disabilities Act (42 U.S.C. § 12101 *et seq.*)

Plaintiff contends that, because he is a qualified person with a disability, he requires

"reasonable modifications to the rules, policies or practices and/or provision of special services

for the receipt of benefits and/or participation in the programs or activities of a public entity"

-9-

under 42 U.S.C. § 12131(2).  Accordingly, Plaintiff assumes that he was entitled to park in the county lot so long as an empty space was available, even though the lot was not otherwise available for public parking.

Subchapter II of the ADA addressing public services defines a "qualified individual with a disability":

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity.

42 U.S.C. § 12131(2).

The first amended complaint alleges facts sufficient to recognize that Plaintiff is a qualified person with a disability.  Nonetheless, this statutory section only defines the terms used in this section of the ADA.  It does not, of itself, grant or prohibit anything to a qualified disabled person or to anyone else.

The relevant statutory section is 42 U.S.C. § 12132, which provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  To establish a violation of Title II of the ADA, a plaintiff must allege three elements: (1) disability, (2) denial of a public benefit, and (3) that the denial of benefit or discrimination was solely because of the plaintiff's disability.  *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272

///

-10-

(2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004); *Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach*, 846 F.Supp. 986, 990 (S.D. Fla. 1994).

The ADA does not entitle disabled persons to park in no-parking zones. *Douris v. Newtown Borough, Inc.*, 207 Fed.Appx. 242, 244 (3d Cir. 2006). "[N]othing in the Act, its purpose, or the regulations can reasonably be read to give disabled parkers access to areas that would not be available to them if they were not disabled." *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996). "The purpose of the Act is to place those with disabilities on an equal footing, not to give them an unfair advantage." *Id.*, *quoting In re Rubenstein*, 637 A.2d 1131 (Del. Sup. 1994); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004). If a disabled person is denied access to an area or facility that is also off-limits to an able-bodied person, no discrimination has occurred since the denial of the benefit was not solely the result of the person's disability.

Regulations promulgated under ADA do not prohibit a public building's having separate parking lots for employees and visitors. *Kornblau*, 86 F.3d at 195. In *Mitchell v. City of Kalamazoo*, 2006 WL 3063433 at *6 (W.D. Mich. October 26, 2006) (No. 4:05-CV-57), the plaintiff, a disabled juror, sought to distinguish her request to park in the courthouse's employee lot from *Kornblau* by pointing out that the courthouse employee lot included spaces for maintenance, law enforcement, county officials, and deliveries as well as the building's employees. The court rejected her argument, noting that the parking scheme was facially neutral and, since all jurors were treated equally, had no discriminatory effect. *Id.*

In *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008), applying the same principle to public accommodation by commercial establishments, the court rejected a disabled

-11-

patron's claim of entitlement to use the employee restroom in the defendant's convenience store. "In such 'mixed-use' facilities, where only part of the facility is open to the public, the portion that is closed to the public is not a place of accommodation and thus is not subject to Title III of the ADA." Id.  *See also Olinger v. U.S. Golf Ass'n*, 205 F.3d 1001, 1004 (7th Cir. 2000), *vacated on other grounds*, 532 U.S. 1064 (2001); *Jankey v. Twentieth Century Fox Film Corp.*, 14 F.Supp.2d 1174, 1179 (C.D. Cal. 1998), *aff'd*, 212 F.3d 1159 (9th ; *Independent Housing Services of San Francisco v. Fillmore Center Assocs.*, 840 F.Supp. 1328, 1344 (N.D. Cal. 1993).

Police officers appropriately ticketed Plaintiff for parking his vehicle in a county lot in which public parking was not permitted.

**B.   *Shuttlesworth***

Plaintiff asserts that the Supreme Court's holding in *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147 (1969), entitled him to drive without a driver's license.  In *Shuttlesworth*, a civil rights era case, the plaintiff was convicted of violating a city ordinance that prohibited parades, processions, or other public demonstrations conducted without a permit from the city commission.  394 U.S. at 150.  In deciding whether to grant the required permit, commission members were guided "only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.'" *Id.*  The Supreme Court rejected the Circuit Court's attempt to reform the ordinance and struck the ordinance down, stating, "It is evident that the ordinance was administered so as . . . 'to deny or unwarrantly abridge the right of assembly and the opportunities for the communication of thought * * * immemorially associated with resort to public places." *Id.* at 159.

///

-12-

California's ensuring public safety by licensing drivers on public thoroughfares is not akin to Birmingham's restricting parade permits only to those whose political speech conformed to the subjective preferences of its city council. *Shuttlesworth* does not authorize Plaintiff or any other California resident to drive without a license.

### C.  Fifth and Fourteenth Amendment Claim

Plaintiff contends that Defendants Fresno County and the Parking Ticket Service Center violated his due process rights under the Fifth and Fourteenth Amendment to the U.S. Constitution by denying him the administrative hearing to which he was entitled under California Vehicle Code § 40215.  Plaintiff alleges that his request for an administrative hearing was refused as untimely because the reviewing entity (unspecified in the first amended complaint) intentionally miscalculated the 21-day period in which Plaintiff could request the hearing. Plaintiff misunderstands both the definition of the date of mailing and the statutory requirements for mailed hearing requests.  As a result, the facts alleged in the first amended complaint do not support a need for this Court to conduct a due-process analysis.

California law considers parking violations as civil offenses subject to civil penalties and administrative enforcement.  California Vehicle Code §§ 40200, 40203.5(b).  The statutory scheme sets forth a two-step process for contesting a parking ticket.  First, within 21 days of the issuance of the ticket the person may request review by the processing agency.  California Vehicle Code § 40215(a).  The processing agency must then conduct an investigation, either with its own staff or by the issuing agency, and either dismiss the citation or deny the person's request. California Vehicle Code §§ 40215(a).  Plaintiff requested review, claiming  "excusable neglect,

inadvertence or harmless error."[7]  Defendant Fresno County Parking Ticket Service Center

conducted its review and denied Plaintiff's request.

If the person is not satisfied with the results of the initial review, California Vehicle Code

§ 40215(b) provides, in pertinent part:

> If the person is dissatisfied with the results of the initial review, the person may
> request an administrative hearing of the violation no later than 21 calendar days
> following the mailing of the results of the issuing agency's initial review.  The
> request may be made by telephone, in writing, or in person.  The person
> requesting the administrative hearing shall deposit the amount of the parking
> penalty with the processing agency.

This is the point at which Plaintiff's request for an administrative hearing began to go

wrong.  On May 26, 2009, the reviewing agency issued a written decision declining to dismiss

Plaintiff's parking citation.  The envelope transmitting the decision was postmarked May 29,

2009.  Plaintiff treated the postmark as the date of mailing and concluded that the 21-day period

to request an administrative hearing ended June 19, 2009.

The date of mailing and the postmark are not synonymous.  *See, e.g.*,  *Humphrey v.

Magnus*, 2005 WL 519304 at *3 (Ca. App. March 7, 2005) (No. E036543); *In re Marriage of

Ruffino*, 2003 WL 22093870 at *3 (Cal. App. 4th Dist. September 10, 2003) (No. G030597).  The

"mailing date" is the date on which a notice is placed in the mail, properly addressed and with

appropriate postage attached.  California Code of Civil Procedure § 1013(a); *Sharp v. Union

Pacific R.R. Co.*, 8 Cal.App.4th 357, 361 (1992).  Where a document did not specify its mailing

date, a California appellate court rejected a plaintiff's reliance on a postmark, observing that the

---

[7]  The true reason, as Plaintiff admits in his first amended complaint, was that, since parking in the county lot was more convenient for Plaintiff than searching for a legal parking place, Plaintiff unilaterally determined that the parking restrictions did not apply to him and parked in a location in which he was not authorized to park.

-14-

plaintiff could have been determined the mailing date simply by requesting a copy of the document from the court. *Humphrey*, 2005 WL 519304 at *3. This means that DMV properly calculated the 21-day period from the date of mailing and that Plaintiff could request an administrative hearing only until June 16, 2009.

Plaintiff's second error was to wait until the last minute to mail his request for an administrative hearing. Since the request was postmarked on June 16, 2009, the DMV could not have received it on or before June 16. California Vehicle Code § 40309 (*emphasis added*) provides:

> Whenever a notice of parking violation is issued in accordance with Sections 40202 and 40203, or a delinquent parking violation is issued pursuant to Section 40206, the amount fixed as a parking penalty for the violation charged may be forwarded by United States mail to the person authorized to receive a deposit of the parking penalty. **Payment of a parking penalty forwarded by mail is effective only when actually received, and the presumption that a letter duly directed and mailed was received does not apply.** Section 40512 is applicable to a parking penalty posted pursuant to this section.

Accordingly, the County properly rejected Plaintiff's request for an administrative hearing, noting "Envelope Postmarked 6/16/10. Past 21 days" (¶ 47). The notice also requested payment of $70.00, double the original fine. Plaintiff never paid.

After exhausting the administrative review process, a contestant may obtain judicial review of the decision of the hearing examiner by filing an appeal in the superior court. California Vehicle Code § 40230. Logically, Plaintiff's next step would have been to file an appeal to the Superior Court, seeking to reversal of the administrative decision, based on Plaintiff's and DMV's disagreement about the method of counting the time. Plaintiff did not do so. Instead, Plaintiff wrote letters to various Defendants complaining that the County had erred

in counting the days in which he could request the administrative hearing; wrote a letter to the County notifying it that it would be liable for all harm, injury and damages that Plaintiff might incur as a result of its error; and filed a claim for damages against the County, which the Board of Supervisors later denied.

Plaintiff's overconfidence in his amateur legal abilities led him to by-pass the next legal step of appealing to the California Superior Court, and instead to "make a federal case out of it." Plaintiff's inability to comply with the administrative and judicial rules of procedure of the DMV and California courts does not constitute a violation of his Fifth and Fourteenth Amendment rights.

### D.   *Qui Tam* Action

#### 1.   Failure to Follow a Court Order

This Court's screening order explicitly stated, "Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint" (Doc. 4 at 19).  By re-styling the first amended complaint as a *qui tam* action and purporting to add claims under California Government Code § 12652 and California Business and Professions Code § 17204, Plaintiff willfully disobeyed this Court's order.

Local Rule 11-110 provides that "failure of counsel or of a party to comply with these Local Rules or with any order of the Court may be grounds for the imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  District courts have the inherent power to control their dockets and "in the exercise of that power, they may impose sanctions including, where appropriate . . . dismissal of a case." *Thompson v. Housing Authority of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir.), *cert. denied*, 479 U.S. 829 (1986).  A court may

dismiss an action, with prejudice, based on a party's failure to obey a court order. *See Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987), *cert. denied*, 488 U.S. 819 (1988) (dismissal for failure to comply with court order). In determining whether to dismiss an action for failure to obey a court order, the court must consider several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Thompson*, 782 F.2d at 831; *Malone*, 833 F.2d at 130.

The public's interest in expeditiously resolving this litigation and the Court's interest in managing its docket weigh in favor of dismissal. The third factor, risk of prejudice to defendants, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor -- public policy favoring disposition of cases on their merits -- is greatly outweighed by the factors in favor of dismissal discussed in these findings and recommendations. Finally, this Court explicitly directed Plaintiff not to add any new or unrelated claims to his amended complaint. Accordingly, this Court recommends dismissal with prejudice of Plaintiff's "*qui tam*" claims. Dismissal of this claim does not depend solely on Plaintiff's disobedience to the Court's directives, however, since the first amended complaint fails to establish a cognizable *qui tam* action.

## 2.    *Qui Tam* Action

A *qui tam* action is "an action brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act, and provides that the same shall be

recoverable in a civil action, part of the penalty to go to any person who will bring such an action and the remainder to the state or some other institution." *Black's Law Dictionary* (6th ed.) at 1251 (West 1990).  The first amended complaint purports to bring Plaintiff's multiplicity of federal statutory and constitutional claims as well as claims under California state law in the form of a *qui tam* action under California Government Code § 12652 and California Business and Professions Code § 17204.

California Government Code § 12652(c)(1) authorizes investigation and prosecution of false claims, as defined by California Government Code § 12651.  Although the duty to investigate and prosecute is assigned to the Attorney General, under certain circumstances, an individual may bring a *qui tam* action to compel investigation and prosecution:

> A person may bring a civil action for a violation of this article for the person and either for the State of California in the name of the state, if any state funds are involved, or for a political subdivision in the name of the political subdivision , if political subdivision funds are exclusively involved.

California Government Code § 12652 (c)(1).

Plaintiff reasons that this law applies because he believes that the Defendants conspired to miscount the 21-day period in which Plaintiff could request an administrative hearing as a means of doubling the parking penalty owed for the original citation.  As discussed above, however, Plaintiff, not DMV, miscalculated the time period for the hearing request.  In addition, there was no false claim involving public funds.  The first amended complaint alleges no facts indicating the existence of a false claim as defined by California Government Code § 12651.

As part of the subsection addressing preservation and regulation of business competition, California Business and Professions Code § 17204 authorizes the Attorney General and certain

-18-

other government officials to seek injunctions for relief of persons or entities who have lost money or property as a result of unfair business competition.  In the absence of any allegation of unfair business competition, this statute has no application to Plaintiff's statutory and constitutional claims.

The first amended complaint fails to state a cognizable *qui tam* claim.

### E.    RICO Claims

For the first time in his first amended complaint, Plaintiff alleges that this action does not seek review of any of the lower court's "decisions, findings, conclusions of law, or . . . relief in the underlying lower trial court infractions whatsoever" (Doc. 6 at ¶ 82).  Instead, Plaintiff alleges RICO claims against Defendants County of Fresno Parking Citation Service Center, its Supervisor Hindman and employee Varela; the Fresno County Board of Supervisors and Poochigian; the Department of Motor Vehicles, Helm-Mendez,[8] and unnumbered John Doe Defendant-employees of the Clovis DMV branch, including employee J002; Superior Court County of Fresno, Judge Fain,[9] and various unnamed court employees; the Fresno County Clerk of Court's office, Matilda Molina and Chan (last name unknown), and additional unnamed employees; Superior Court of Fresno, Appellate Division, Judge Donald S. Black, Judge Kent Hamlen, and other unnamed appellate division employees; and City Attorney David J. Wolfe, Deputy City Attorney Jenell Van Bindsbergen,[10] and an unnamed Deputy City Attorney.

---

[8]  Helm-Mendez is not named as a Defendant in the caption or in the initial paragraphs identifying the Defendants.

[9]  Judge Fain is not named as a Defendant in the caption or in the initial paragraphs identifying the Defendants.

[10]  Wolfe and Van Bindsbergen are not named as Defendants in the caption or in the initial paragraphs identifying the Defendants.

Alleging no factual support whatsoever, Plaintiff pleads only his legal conclusion that all of the Defendants named in this claim were RICO conspirators who worked together to impose a double parking fine on Plaintiff by miscalculating the time period in which he could request an administrative hearing.  As previously discussed, Defendants did not miscalculate the time period: Plaintiff did.  Further, no facts alleged in the first amended complaint suggest that the diverse group of Defendants included in this claim ever conspired in any way.

As previously discussed, this Court's screening order explicitly stated, "Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint" (Doc. 4 at 19).  The complaint did not include a RICO claim.  Even if Plaintiff had provided sufficient factual allegations to support his assertions and state a claim upon which relief might be granted, this claim would still violate this Court's screening order precluding the introduction of another new claim into the first amended complaint.  The Court recommends that this claim be dismissed with prejudice.

## F.      Eighth Amendment Claim: Deliberate Indifference to Medical Need

Plaintiff alleges that Defendant Police Officers Riddle, Roseno, Baines and McFadden, the Clovis Police Department, and Community Regional Medical Center subjected him to cruel and unusual punishment incident to his arrest.  Despite knowing that Plaintiff was disabled, these Defendants allegedly withheld pain medication and insulin as punishment or an inducement to coerce Plaintiff to sign his traffic citation.  They denied his requests for a blood draw, lipase level check, and white blood cell count.  They "tortured, embarrassed, humiliated and degraded" Plaintiff and continuously stated that, if Plaintiff would sign the traffic citation, he could have his

///

-20-

medications and receive medical treatment.  They failed to conduct an adequate medical examination.

Because a pretrial detainee has not been convicted of a crime, but has only been arrested, the detainee's right to receive adequate medical care derives from the substantive Due Process Clause of the Fourteenth Amendment rather than from the Eighth Amendment's protection against cruel and unusual punishment.  *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003).  *See also Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).  Nonetheless, the Due Process Clause imposes, at a minimum, the same duty to provide adequate medical care to those incarcerated as imposed by the Eighth Amendment: "'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" *Gibson*, 290 F.3d at 1187, *quoting Carnell*, 74 F.3d at 979.  Accordingly, a court evaluating a pretrial detention claim may rely on decisions applying the Eighth Amendment standards for claims of inadequate medical care to convicted prisoners.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), *quoting Estelle v. Gamble*, 429 U.S. 97 (1976).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096, *quoting McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133,

1136 (9th Cir. 1997) (en banc) (*internal quotations omitted*).  Deliberate indifference is shown by

"a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm

caused by the indifference." *Jett*, 439 F.3d at 1096, *citing McGuckin*, 974 F.2d at 1060.

Deliberate indifference may be manifested "when prison officials deny, delay or intentionally

interfere with medical treatment, or it may be shown by the way in which prison physicians

provide medical care." *Jett*, 439 F.3d at 1096, *citing McGuckin*, 974 F.2d at 1060 (*internal*

*quotations omitted*).

Before a court can conclude that a prisoner's civil rights have been violated, "the

indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or

'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*,

622 F.2d 458, 460 (9th Cir. 1980), *citing Estelle*, 429 U.S. at 105-06.  Deliberate indifference is

"a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of

due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994),

*quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Delays in providing medical care may manifest deliberate indifference.  *Estelle*, 429 U.S.

at 104-05.  To establish a claim of deliberate indifference arising from delay, a plaintiff must

show that the delay was harmful.  *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per

curiam); *McGuckin*, 974 F.2d at 1059; *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir.

1990); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989); *Shapley v. Nevada Board of State*

*Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).  Plaintiff does not allege any

physical harm arising from the delay: he complains only that he signed the traffic citations

because he feared physical harm if he did not take his medications on schedule.

-22-

Courts generally defer to prison official's decisions to delay administering prescription drugs to prisoners until they have been able to confirm the identity of the drug in question and verify that it was properly prescribed to the prisoner.  Denial of prescription medication upon arrest generally does not satisfy the deliberate indifference standard if the plaintiff prisoner ultimately received his medication.  *Wyatt v. County of Butte*, 2006 WL 3388550 (E.D.Cal. November 22, 2006) (No. 2:06-cv-1003-GEB-DAD).  Existing cases reflect varying factual situations underlining the wisdom of officials' not automatically administering prescription medications in the detainee's possession until the substance's identity has been confirmed and the prescription verified.  *See, e.g., Gibson*, 290 F.3d at 1183 (acknowledging Washoe County 's procedure requiring police officers to provide any prescription medications belonging to detainee to intake nurse for evaluation and determination whether to place it in detainee's secure property or to transfer it to infirmary for detainee's follow-up care); *Knowles-Browder v. California Forensic Medical Group Staff*, 2007 WL 210518 (E.D. Cal. January 26, 2007), *adopted by* 2007 WL 763697 (E.D. Cal. March 9, 2007) (No. CIV S-05-1260 FCD DAD P) (upholding prison physicians' decision to discontinue administration of drug prescribed for prisoner before his arrest where medical records did not establish diagnosis for which the prescribed drug was appropriate and emergency room physician had prescribed drug on a trial basis); *Reynolds v. Verbeck*, 2006 WL 3716589 (N.D. Cal. December 15, 2006) (No. C 05-05201 CRB) (noting, in dicta, that jail personnel would need to contact the prescribing doctor to verify a detainee's prescription); *Allen v. Daniels*, 2006 WL 1704514 (D. Ore. June 14, 2006) (No. 05-1277-BR) (finding without merit the plaintiff's claims that prescription medicine for his lung cancer was incorrectly withheld where official's attempts to verify the medication found no record of a lung

cancer diagnosis or of prescriptions to detainee of the drugs in question).  "Confiscating

prescription medication . . . from a detainee on being placed in jail clearly does not violate the

constitution."  *Davis v. Clark County Detention Center*, 2010 WL 3070431 at * 4 (D. Nev.

August 4, 2010) (No. 2:09-cv-02196-RCJ-LRL).  That Defendants did not automatically dispense

Plaintiff's prescription on his request was not a constitutional offense.

Without an additional supporting facts, the officers' statements that if Plaintiff signed the

citations, he could be released to take his medication and to secure any medical test he desired

appears to be no more than a statement of fact.  Plaintiff could have simply resolved the ordinary

restrictions accompanying his arrest, with which he was apparently very unhappy, by signing the

traffic citations as most motorists routinely do in the course of getting a ticket.  The first

amended complaint provides no facts about the circumstances of Plaintiff's refusing to sign the

citations and requiring the officers to arrest him.  Plaintiff's actions are particularly inexplicable

since Plaintiff not only admits that his vehicle was unregistered and that his driver's license had

expired at the time the citations were issued, but contends that he specifically sought a traffic

stop and citations as a means of forcing the issue of the administrative hearing that he believed

was wrongfully denied.

Further, arresting officers do not generally render medical treatment or make decisions

regarding administration of prescription medication or medical tests.  Defendant police officers

responded promptly and properly to Plaintiff's complaints of discomfort and need for

prescription medicine: they transported him to Community Medical Center's emergency room to

be cared for by medical professionals.  Plaintiff alleges no cognizable claim against Defendants

Riddle, Roseno, Baines and McFadden for deliberate indifference to serious medical needs.  *See*

*Walker v. Fresno Police Department*, 249 Fed.Appx. 525, 526 (9th Cir. 2007), *cert. denied*, 552 U.S. 1198 (2008) (affirming grant of summary judgment to defendant police officers on plaintiff's claim of inadequate medical attention following arrest since defendants took the plaintiff to a hospital emergency room soon after they arrested him).  *See also Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (holding that officers satisfied their duty to provide medical care to a suspect injured in the course of his arrest by summoning medical help to take detainee to hospital); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986) (finding that jury could reasonably have concluded that police officers fulfilled their duty under the due process clause by taking injured detainee to a hospital for medical attention).  *Cf. Gallagher v. City of Winlock, Washington*, 287 Fed.Appx. 568, 575-76 (9th Cir. 2008) (reversing and remanding for further proceedings juvenile detainee's claim that officers were deliberately indifferent to her medical need by denying her request to take epilepsy medication, which resulted in her having a seizure while en route to detention facility).

Emergency room personnel and Community Regional Medical Center Defendants did not violate Plaintiff's due process rights by failing to provide medication and administer tests according to Plaintiff's preferences or schedule.  Mere differences of opinion between the detainee and the medical providers as to proper medical care do not give rise to a constitutional claim.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.), *cert. denied*, 519 U.S. 1029 (1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

The first amended complaint does not allege a cognizable claim for deliberate indifference to serious medical need.

### G.   Eighth Amendment Claim: Physical Restraints

Plaintiff further contends that Defendant police officers' handcuffing Plaintiff incident to

his arrest constituted cruel and unusual punishment.  Handcuffing a detainee in the course of his

or her arrest is an accepted part of law enforcement that promotes the safety and security of both

officers, detainees, and in this case, emergency room personnel.  Not "every malevolent touch . . .

gives rise to a federal cause of action."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "The Eighth

Amendment's prohibition of cruel and unusual punishments necessarily excludes from

constitutional recognition *de minimis* uses of physical force, provided that the use of force is not

of a sort repugnant to the conscience of mankind."  *Id.* at 9-10 (*internal quotation marks and

citations omitted*).  That Plaintiff was restrained in the course of his arrest and emergency room

visit does not offend the federal constitution.

### H.   Procedural Challenges to Traffic Court Proceedings

Although the first amended complaint is less than clear on the proceedings and current

status of Plaintiff's state court trial on his traffic violations, Plaintiff raises multiple claims based

on alleged procedural errors in the course of trial.  Plaintiff may not use a federal district court as

a means to overcome or set aside questions integral to California courts' civil procedure.

Appellate jurisdiction of state court judgments rests in the United States Supreme Court,

not in the federal district court.  28 U.S.C. § 1257.  A federal district court lacks subject matter

jurisdiction to hear an appeal of a state court judgment (the Rooker-Feldman Doctrine).  *District

of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*,

263 U.S. 413 (1923).  *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 896 (9th Cir. 2003), *cert. denied*,

540 U.S. 1213 (2004).  A federal claim must be dismissed for lack of subject matter jurisdiction

if the claims raised in the complaint are inextricably intertwined with the state court's decisions

so that adjudication of the federal claims would undercut the state ruling or require the district

court to interpret the application of state laws or procedural rules. *Bianchi*, 334 F.3d at 898.  Put

another way, these procedural claims are inextricably intertwined with the state court judgment

because the federal claim succeeds only to the extent that the state court erred in the course of

Plaintiff's trial and because the relief that Plaintiff requests in this federal claim would

effectively reverse the state court's decision or void its ruling. *Fontana Empire Center, LLC v.*

*City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002).  The Rooker-Feldman Doctrine applies to

federal "cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings and inviting district court review and

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280,

284 (2005).

Plaintiff's claim seeks review of determinations made in the course of the state traffic

court action and in matters intertwined with it.  Because this Court lacks subject matter

jurisdiction over Plaintiff's claims of procedural errors in state court, this claim must be

dismissed.

**V.**     **Numbered Claims**

**A.**     **First Cause of Action: EMTALA (42 U.S.C. §1395dd(a))**

Plaintiff first claims that Defendants Community Regional Medical Center, City of

Clovis, Clovis Police Department, and Does 1-10 violated the provisions of the Emergency

Medical Treatment and Active Labor Act (42 U.S.C. § 1395dd) ("EMTALA") by failing to

provide stabilizing treatment.  EMTALA provides, in pertinent part:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a).

Police officers have no duties under EMTALA.  Indeed, the statute does not even consider police officers or any person or entity other than hospitals.  The legislative purpose of EMTALA is to ensure that adequate emergency medical treatment is provided to stabilize emergency room patients before hospitals transfer them elsewhere.  *Jackson v. East Bay Hospital*, 246 F.3d 1248, 1254 (9th Cir. 2001).  "The Committee [was] greatly concerned about the increasing number of reports that hospital emergency rooms [were] refusing to treat patients with emergency conditions if the patient [did] not have medical insurance."  H.R. Rep. No. 241, 99th Cong., 1st Sess., Part I. at 27 (1985), *reprinted in* 1986 U.S. Code & Admin. News 579, 605.

A hospital's first duty under EMTALA is to provide an "appropriate medical screening examination within the capability of the hospital's emergency department" to determine "whether or not an emergency medical condition exists." *Jackson*, 246 F.3d at 1254, *quoting* 42 U.S.C. § 1395dd(a) (1986).  An "emergency medical condition" is one "manifesting itself by acute symptoms of sufficient severity (including symptoms of severe pain) such that the absence of immediate medical attention could reasonably be expected to result in–(I) the placing of the health of the individual . . .in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part . . ." *Jackson*, 246 F.3d at 1254, *quoting* 42 U.S.C. § 1395dd(b)(1)(A) (1986).  If the hospital detects an emergency medical condition,

-28-

EMTALA generally requires it to stabilize the patient before transfer. *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1259 (9th Cir. 1995). No duty to stabilize the patient arises unless the hospital identifies an emergency medical condition. *Id.*

Plaintiff does not allege that he was experiencing an emergency medical condition within the definition set forth in EMTALA. Plaintiff contends that he possess a chronic medical condition requiring him to take certain prescribed medications, that the hospital and unidentified arresting officers did not allow him to take the medication as he requested, and that the hospital failed to provide specific screening associated with Plaintiff's chronic pancreatic condition upon Plaintiff's request. EMTALA is not intended to address Plaintiff's claim. It is intended only to identify emergency medical conditions manifested by acute and severe symptoms and to ensure that the patient is not transferred or discharged without first having been stabilized. *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496, 497 n. 2 (9th Cir. 1996), *cert. denied*, 520 U.S. 1251 (1997).

The first amended complaint does not state a cognizable EMTALA claim.

**B.**     **Second Cause of Action: Americans With Disabilities Act**

Title II of the Americans with Disabilities Act (ADA) "prohibit[s] discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052.

Plaintiff contends that Defendants City of Clovis, officers of the Clovis Police Department, and Community Regional Medical Center refused Plaintiff emergency medical treatment and denied him medication on the basis of his status as a disabled individual.  The first amended complaint alleges only the legal conclusions that Plaintiff is a disabled person and that he was denied treatment and medication because of his disability.  No factual allegation supports a conclusion that Plaintiff was denied any treatment based on his disability.  The only facts alleged reveal that Plaintiff was denied prescribed medications and testing that he personally wanted in the course of his arrest: an experience that occurred without regard to Plaintiff's alleged disabilities. The first amended complaint does not set forth a cognizable ADA claim.

## C.     Fourth Cause of Action: First Amendment Claim[11]

Plaintiff asserts that Defendants Fresno County, City of Clovis, Clovis Police Department Officers, and John Does 11-40 violated Plaintiff's rights of speech, petition, assembly, and association under the First Amendment of the U.S. Constitution.  (The first amended complaint neither identifies John Does 11-40 nor links them to this claim in any way.)  No alleged fact links Fresno County or the City of Clovis to any violation of Plaintiff's rights of speech, petition, association, or assembly.   One or more specific officers, never identified in the first amended complaint, stopped Plaintiff for driving an unregistered vehicle and issued a second citation

---

[11]  The first amended complaint does not include a Third Cause of Action.

-30-

because he was an unlicensed driver.  Plaintiff admits that he committed the traffic violations but refused to sign the citations at the scene, leading to his arrest.  The first amended complaint does not state a cognizable claim for violation of his First Amendment rights by any of the Defendants named in this count.

### D.        Fifth Cause of Action: Supervisory Liability

Plaintiff contends that Defendants Fresno County, City of Clovis, Community Regional Medical Center, Clovis Police Department Officers, and John Does 10-20 are liable as supervisors to Plaintiff for violation of his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  This cause of action fails to state a claim upon which relief may be granted in that it sets forth no factual basis for its allegations that the various Defendants named were liable as supervisors of an unidentified John Doe Defendant whose alleged wrongdoing is unspecified. A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555-56 (*internal quotation marks and citations omitted*).

Initially, this Court observes that neither Fresno County of Community Regional Medical Center can be categorized as supervisors of a the unspecified officer.  At no point in the first amended complaint is there any suggestion of involvement by any county officer.  Nor can any John Doe Defendants be included as supervisors with no allegations identifying them in any way or linking them to supervision of the unidentified officer.

The City of Clovis is not subject to supervisory liability as a matter of law, and this claim must be dismissed against it. Municipal liability must rest on the municipality's actions, not those

-31-

of its employees.  A local government unit may not be held responsible for the acts of its

employees under a *respondeat superior* theory of liability.  *See Board of County Comm'rs of*

*Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997); *Collins v. City of Harker Heights,*

*Tex.*, 503 U.S. 115, 121 (1992); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989);

*Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Fogel v. Collins*, 531 F.3d

824, 834 (9th Cir. 2008); *Webb v. Sloan*, 330 F.3d 1158, 1163-64 (9th Cir. 2003), *cert. denied*, 540

U.S. 1141 (2004); *Gibson*, 290 F.3d at 1185; *Hopper v. City of Pasco*, 241 F.3d 1067, 1082 (9th

Cir.), *cert. denied*, 534 U.S. 951 (2001).

This vague claim does not state a cognizable cause of action.

**E.      Sixth Cause of Action: Unspecified Violations of Plaintiff's Civil Rights**

The sixth cause of action is too vague and uncertain to state a cognizable cause of action.

The Defendants' identity is unclear.  The caption identifies this claim as being against

"Supervisory Officer John Doe and John Doe Officer 2 and Does 1 through 100"; the body of the

claim identifies the Defendants as Supervisory Officer Sgt. McFadden, Officer Resano, and Does

1 through 100.  The conclusory allegation that the Defendants violated Plaintiff's First, Fourth,

Fourteenth, and Eighth Amendment rights never alleges any facts explaining what the alleged

violation was or how it occurred, or how Defendants' unspecified acts were malicious,

oppressive and in reckless disregard of Plaintiff's rights, entitling him to punitive damages.  This

claim should be dismissed with prejudice.

**F.      Causes of Action Seven Through Seventeen: Plaintiff's State Claims**

Section 1983 does not provide a cause of action for violations of state law.  *See Weilburg*

*v. Shapiro*, 488 F.3d 1202, 1207 (9th Cir. 2007)*; Galen v. County of Los Angeles*, 477 F.3d 652,

662 (9th Cir. 2007); *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997); *Lovell v. Poway Unified School Dist.*, 90 F.3d 367, 370 (9th Cir. 1996); *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986); *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir.), *cert. denied*, 454 U.S. 857 (1981).  Pursuant to 28 U.S.C. § 1367(a), however, in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c).

        "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).  "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367 (c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."  *United Mine Workers of Amer.*, 383 U.S. at 726.  Accordingly, unless a complaint states a cognizable federal cause of action, a federal court should not exercise jurisdiction over Plaintiff's state claims.

        Because this Court recommends that all federal causes of action be dismissed, it also recommends that the District Court not exercise its pendant jurisdiction over the eleven state claims.  In light of this recommendation, these Findings and Recommendations do not address the eleven state claims.  In the event that the District Court disagrees with these Findings and Recommendations, it may direct this Court to prepare supplemental findings and recommendation regarding the state claims.

## G.     <u>Eighteenth Cause of Action: Injunctive Relief</u>

The Eighteenth Cause of Action is a request for injunctive relief, contending that Defendants' wrongful conduct must be enjoined and restrained lest it cause great and irreparable injury to Plaintiff.  The claim provides no clue whatsoever of what continuing acts of these Defendants must be enjoined.   In light of vagueness of this eighteenth cause of action and the failure of first amended complaint to set forth any cognizable claim, this Court recommends that no injunctive relief need be considered or provided.

## VIII.     <u>Findings and Recommendations</u>

This Court finds that the first amended complaint fails to state a claim upon which relief may be granted under federal law.  In the absence of any cognizable federal claim, this Court recommends that the District Court decline to exercise its pendant jurisdiction over Plaintiff's state claims.  Accordingly, this Court recommends that the first amended complaint as a whole be dismissed with prejudice.

These Findings and Recommendations will be submitted to the Hon. Anthony W. Ishii, the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that, by failing to file objections within the specified time, he may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 18, 2010            /s/ Sandra M. Snyder**

-34-

UNITED STATES MAGISTRATE JUDGE